No. 13,754.

### Stock Yards National Bank of South Omaha *v.* Neugebauer.
(48 P. [2d] 813)

Decided August 5, 1935.   Rehearing denied September 9, 1935.

Messrs. McConley & McConley, for plaintiff in error.

Mr. C. M. Rolfson, Mr. T. E. Munson, for defendant in error.

*In Department.*

Mr. Justice Bouck delivered the opinion of the court.

The judgment under review is one in an action on a promissory note of which the Stock Yards National Bank of South Omaha, plaintiff below and plaintiff in error here, was the legal holder by indorsement of C. R. Johnson, the payee. The maker, Neugebauer, defendant in error here, paid Johnson the amount due on the note. The main question before us is whether this payment constituted payment of the note and so discharged it.

1. When payment is made to the payee after transfer of a promissory note, and the maker does not exact delivery of the note itself, the maker's liability, according to the general rule, still continues. To that rule, however, there are several well-known exceptions. One of these is that, even though the note is not surrendered at the time of payment, the payment is effectual as a discharge if the one to whom payment is made has been given either express or implied authority to receive it; in other words, if under the law he is the agent of the holder for that purpose. Whether the one receiving payment is or is not the original payee is immaterial.

Neugebauer contends that the evidence in the present record shows without contradiction that Johnson was the holder's agent. An analysis of the evidence convinces us that he is right. Johnson was cashier of the State Bank of Ovid, Colorado. The bank had previously, through

Johnson, supplied money to Neugebauer and taken a promissory note payable to Johnson at that bank. Without the maker's knowledge, the note he had given was sold and delivered to the Stock Yards bank, but all subsequent transactions with reference to it were by this bank left to be attended to by Johnson, who, at least so far as Neugebauer was concerned, continued to all intents and purposes the legal holder. Before maturity of the original note and with the full authority of the Stock Yards bank, again without knowledge on the part of the maker that this bank was the real owner, Johnson loaned an additional sum to Neugebauer out of the Ovid bank's funds and took a new note for the increased amount, made payable to Johnson at the Ovid bank as was the previous one. This new note, also without Neugebauer's knowledge, was likewise sent to the Stock Yards bank with Johnson's indorsement. A little later, Johnson had Neugebauer execute a third note by way of renewal for the same sum, also payable to Johnson at the Ovid bank. This note was similarly indorsed by him. It will thus be seen that the Stock Yards bank dealt altogether through Johnson and the Ovid bank, and permitted Johnson to transact all its business with Neugebauer. At maturity of this third note—which is the one involved in the present litigation —Johnson received from Neugebauer a payment reducing the principal to less than $1,000, and on November 25, 1932, he received the balance. That the Stock Yards bank confided in Johnson as its own agent and did not regard him as agent of the maker is clearly shown by the correspondence between them. The bank permitted Johnson to represent it, as we have seen, in connection with the original note, even to the extent of accepting in lieu thereof another note that covered not only the original note but an additional loan made to the maker by the original payee or his bank. This larger note was permitted to be made payable to Johnson, despite the fact that at that time, as the Stock Yards bank claims, it was the owner of the note supplanted. The same procedure,

it will be remembered, was followed when the third note was given by Neugebauer. And, more than that, the bank permitted the payee to collect the principal in more than one installment, and credited the maker with purported payments without giving the maker the slightest inkling that any of the renewals or payments was not received with the authority of the holder. The law will not permit a maker to be subjected to double payment under the circumstances thus shown. We think there can be only one reasonable inference drawn from the evidence, namely, that Neugebauer was justified in looking upon Johnson as the person entitled to receive payment, whether as holder or as agent of the unknown indorsee.

2. Counsel also assign error on the ground of bias and prejudice of the jury, but nothing in the record substantiates this charge. Their brief says: "But to state this proposition is to prove it beyond question. The plaintiff is a large city bank. The defendant is a farmer and stockraiser, living in Sedgwick County, Colorado. The jury without exception was composed of farmers and stockraisers, and we were powerless to remedy the situation because all fourteen men called into the box were engaged in the same business." In the absence of anything to the contrary in the record, the jurors were presumably selected in the usual way and doubtless the court gave sufficient latitude in the examination of the jurors on the voir dire to give assurance of their fairness and impartiality. At any rate, nothing specific is called to our attention, and no specific objection or exception is preserved in this connection. Consequently the assignment is not sustained.

3. Complaint is also made that two tendered instructions were refused. Their rejection was proper. One was contradictory of the principle which applies by way of exception to the general rule in cases of this kind, as stated herein at the beginning. The other was merely cumulative, being covered in the instructions that were

given by the court with the express approval of plaintiff's counsel.

It follows that the judgment of the district court must be affirmed.

Judgment affirmed.

MR. CHIEF JUSTICE BUTLER and MR. JUSTICE YOUNG concur.